## JOHN L. DIMMOCK *et al. versus* LUTHER BIXBY *et al.*

If upon a demurrer to a bill in equity, it appear, that the plaintiff is entitled to re lief as to some of the matters set out in the bill, and not as to others, the demur rer should be overruled, unless the bill be multifarious.

Where an insolvent debtor assigns his property to trustees for the benefit of his cre!- itors, and various questions of difficulty arise from the conflicting claims of credi tors, which it might not be safe for the trustees to decide without the directions of the Court, they will be entitled to such directions ; and they will not be obliged to wait until they are sued by the creditors, but may file a bill for the purpose of ob- taining the same.

Where the property of an insolvent debtor is assigned for the benefit of his creditors, although the creditors must join in a bill brought for the purpose of compelling a distribution of the trust fund, yet if the assignees violate their trust to the injury of a particular cestui-que-trust, he would have his remedy in equity.

So if in such case the assignees enter into the usual covenants for the performance of their trust, and there is a breach of such covenants, to the injury of any one of the covenantees, he can maintain an action at law without joining the other cove- nantees, although the covenants are joint in their terms.

A bill in equity is not *multifarious*, where one general right is claimed by the plain tiff, although the defendants may have separate and distinct rights.

Where a bill filed by the assignees of an insolvent debtor prayed the aid and direc- tions of the Court in relation to the conflicting claims of the creditors, and the or- der in which they should be paid, and also prayed for relief against the debtors of the assignor and sought to enforce the claims of the assignees against them, it was *held*, that as these two branches of the bill were founded on distinct rights, they could not be joined.

THIS was a bill in equity, setting forth, that on or about January 16, 1834, the firm of Bixby, Valentine & Co., by a deed of that date, assigned their property to the plaintiffs in trust for the benefit of their creditors ; that the plaintiffs took possession of the property ; and that divers conflicting claims having been made on them to the property assigned, and divers facts being concealed from the plaintiffs without which they could not rightly discharge the trusts assumed by them, and divers persons refusing to give up to the plaintiffs, property and assets so assigned and to render in just accounts and pay over true and proper balances of matters which were so as

signed, of which persons some were partners in interest with the assignors, in consideration thereof, the plaintiffs, being remediless at law, asked the aid and direction of the Court, and such relief as it might give in the premises.

The bill then proceeded to set forth the particulars wherein the plaintiffs asked discovery, direction and relief.

First, a schedule attached to the assignment, and marked B, contained the names of those creditors who were first to be paid in full. Another schedule, marked C, contained the names of those who were to be paid next, *pro ratâ*, the property being insufficient to pay them in full.

It was alleged, that some of the persons interested in schedule C, had recently, and after some payments made by the plaintiffs, prohibited them from paying the creditors in schedule B, on the ground, that the two schedules were separated by mistake, and such persons had offered to prove that it was the intention of the assignors to provide that the creditors in schedule C should, upon their performing a certain condition set forth, be paid *pari passu* with the creditors in schedule B, and had also offered to prove that a demand of a creditor in schedule B had been paid; which payment was denied by such creditor.

The next subject in respect to which the plaintiffs asked the direction of the Court, arose out of the following clause in the assignment, which was the first in the declaration of the trusts thereby created : " First, all the bonds due from the said parties of the first part, at the customhouse, and all debts due from said parties not exceeding one hundred dollars." The bonds at the customhouse having been paid, the creditors of the assignors, to whom a less sum than 100 dollars was due, claimed to be paid next. But many of these creditors had never executed the assignment; and the creditors who were parties to the assignment, prohibited the plaintiffs from paying the debts of any creditors who had not executed the assignment.

The next subject was an item in schedule B, namely, William Parker's note for $1116·46. There were two notes answering this description, one held by the Massachusetts Bank,

Dimmock
_v._
Bixby.

and the other by the Concord Bank ; and each bank claimed of the plaintiffs payment of the note which it held.

The next prayer for aid and direction, related to the assignment to the plaintiffs of the goods and effects and balance of account, in the hands or due from Joseph Hibbert in St. Domingo. The plaintiffs having called on Hibbert to render his account, he charged a commission on sales and purchases of merchandise made by him ; which the assignors contended was not according to their agreement with him.

The plaintiffs next asked aid and direction in relation to the following clause of the assignment : " And it is further agreed, that any errors or unintentional omissions in the schedules annexed, may be rectified or supplied according to the true spirit and meaning of this contract, by the agreement thereto of said parties of the first and second part, at any time within one month from the date hereof." In pursuance of this clause, a schedule was prepared, correcting many errors in the schedules originally attached to the assignment. This corrected schedule was formally accepted and adopted by the assignors and by two of the assignees, but Dimmock, another of the assignees, refused to accept the same. The corrected schedule enlarged some of the demands to be paid and diminished others ; and some of the creditors, who would be benefited by the correction, required that the corrected schedule should go into effect, but on the other hand, those creditors who would suffer by its adoption, alleged, that the conditions of the corrections were not complied with, and that the same could not be carried into effect. The plaintiffs were unable to determine, whether all or any, and if any, which of the alterations in the corrected schedule, should be allowed and carried into effect.

They next asked aid and direction in relation to a clause in the assignment transferring to them ten shares in the Commercial Wharf Corporation. These shares the assignors had pledged to the Commercial Bank to secure the payment of a loan of the sum of $10,000. The assignees were ready to pay to the bank the amount of the loan with interest, but the bank refused to surrender and reconvey the shares, to the great diminution of the trust funds, such shares being worth $20,000.

The next subject in relation to which the plaintiffs asked <span>Dimmock</span> the aid and direction of the Court, arose from the addition of <span>v.</span> <span>Bixby.</span> the name of Simpson Clark to schedule C, with the consent of the parties of the first and second part, being all whose consent was deemed necessary, within the period limited for correcting the schedule ; but since such addition, an examination of the books of the assignors, had occasioned great doubt, whether the addition ought to have been made.

The bill further prayed for discovery, and that the assignors might disclose their intentions in regard to the several schedules, and the proposed alterations of them ; and that the several defendants might be compelled to interplead and settle and adjust their several claims to the funds in the plaintiffs' hands

It appeared that the plaintiffs entered into the usual covenants to perform the trusts.

Hibbert, the Commercial Bank, and the creditors interested in the questions raised by the bill, were made parties to the suit.

Several of the defendants answered.

Simpson Clark, who was made a defendant, demurred for the following causes :

1. Because the bill disclosed no equity on the part of the plaintiffs, nor any right to the assistance of a court of equity ; and

2. Because the bill was multifarious.

The bill was dismissed as to the Commercial Bank.

The case was argued in writing.

*T. P. Chandler*, for the defendants. The bill asks the aid of the Court in settling partnership business, in adjusting accounts, in collecting debts, in compelling persons to give up specific property, and in construing the deed of assignment, and its direction in appropriating the trust funds. The plaintiffs seek to substitute the Court for the trustees in settling all the business of the trust. They pray, that the defendants may interplead and settle the respective amounts to which they are entitled. The case is without a precedent. The plaintiffs are not entitled to come here to ask the construction of their own deed. They voluntarily entered into it and must abide by such construction as a court of law may give to it.

There is no head of equity that covers the case. It may be said, that each creditor who has executed the assignment, may sue the plaintiffs at law on the covenants, and that judgment in one case, would not be evidence in another ; and that the plaintiffs might therefore be injured. The answers to this are . 1. That the plaintiffs' covenants with the creditors are joint and not several ; 2. That if the fact were otherwise it would not · of itself give jurisdiction to a court of equity ; 3. That if such were the ground of the present suit, the plaintiffs should have alleged in their bill, that actions at law had either been commenced against them, or threatened ; and 4. That it may well be contended, that a judgment by one creditor at law might be used in an action by another creditor. A court of law would not permit the trustees acting in good faith to be injured.

There are a few instances in England of suits by executors and administrators, to obtain the direction of the court in appropriating the funds of the estate ; but such suits have never been favored. *Rush* v. *Higgs*, 4 Ves. 638 ; *Morice* v. *Bank of England*, Cases Temp. Talbot, 224. Even suits by creditors themselves against administrators have been allowed, because of the vast power of preference, which administrators had at common law. *Gilpin* v. *Lady Southampton*, 18 Ves. 469.

The clause in the Revised Statutes, *c.* 81, § 8, giving the Court equity jurisdiction in " suits and proceedings for enforcing and regulating the execution of trusts," contemplates *adverse suits.* It was made for the purpose of giving a remedy to cestui-que-trusts when none existed at common law ; it does not contemplate suits by trustees themselves against the cestui-que-trusts.

It is true, that where this Court has jurisdiction by virtue of a trust, it may correct " mistakes " arising under such trust ; but in such cases, the " trust " must draw to it the jurisdiction, and not the " mistake." If it be the object of the bill to enforce or regulate a trust, incidental mistakes might be corrected ; but if the object were to correct a mistake, and *that* was the ground of complaint, the Court would have no jurisdiction by virtue of the clause referred to. If however

Dimmock
v.
Bixby.

the Court had jurisdiction in the present case, the mistakes suggested could not be corrected ; for the deed of trust cannot be controlled or varied by parol evidence.

The bill is multifarious. This objection is equitable. It would be productive of great injury to many of these defendants, if compelled to lie out of their share of the funds, until the claims on Hibbert and the Commercial Bank are settled. The bill contains no less than seven distinct subjects of complaint, and in no one of them are all the defendants interested. The rule is, that chancery will not take cognisance, in one suit, of several matters of distinct natures against several defendants *West* v. *Randall*, 2 Mason, 181 ; *Buckley* v. *Pusgrove*, East, 227 ; *Harrison* v. *Hogg*, 2 Ves. jun. 323 ; *Devoe* v. *Fanning*, 4 Johns. Ch. R. 199 ; *Johnson* v. *Johnson*, 6 Johns. Ch. R. 163 ; *Beck* v. *Harris*, Hardres, 337 ; *Ward* v. *Duke of Northumberland*, 2 Anstr. 469 ; *Dilley* v. *Doig*, 2 Ves. jun. 486 ; *Whaley* v. *Davison*, 2 Sch. & Lefr. 367 ; *Sexton* v. *Davis*, 18 Ves. 72 ; *Stewart* v. *Coalter*, 4 Randolph, 74 ; *Brooks* v. *Lord Whitworth*, 1 Maddock, 59. So multifarious and complicated are the matters set forth in this bill, that no decree could be made to cover the whole ground of complaint.

The rule in equity is, that a demurrer bad in part, is bad *in toto*. But this rule cannot extend to bills that are so complicated and multifarious as to render it impracticable for the Court to grant relief, although there may be some particular portion of the bill, which would, under different circumstances and if presented in a bill by itself, be a subject for the equitable consideration of the Court. The rule, that a demurrer cannot be good in part and bad in part, has been relaxed in England ; and in Kentucky the contrary has been held. *Pope* v. *Stansbury*, 2 Bibb, 484. I contend, that there is no particular in which the plaintiffs are entitled to the aid of the Court; but if any matter set forth in the bill would of itself be good cause of complaint, the bill is so constructed, that it would be better to dismiss it, and let the plaintiffs commence anew, than attempt to remodel it.

*Parsons* and *Stearns*, for the plaintiffs.

WILDE J. delivered the opinion of the Court. This is a

June 29th

Dimmock
*v.*
Bixby.

bill by trustees under an assignment of the goods, effects, and credits of insolvent debtors for the benefit of their creditors. The bill discloses the conflicting claims of the creditors, and other matters involved in the execution of their trust, and prays the aid and direction of the Court, and for indemnity. The creditors interested in the questions raised by the bill, and some of the debtors, are made parties to the suit. Several defendants have answered, but one of the creditors has demurred ; and two causes of demurrer are assigned :

1. Because the bill discloses no equity on the part of the plaintiffs, nor any right to the assistance of a court of equity ; and, 2. Because the bill is multifarious.

It is said, that the bill is peculiar and without precedent. That it asks the aid of the Court in settling partnership business ; in adjusting accounts ; in collecting debts ; in compelling persons to give up specific property ; in construing the deed of assignment ; and its direction, in appropriating the trust funds. If these objections be well founded, still they do not support the first cause of demurrer.

If the plaintiffs are entitled to the aid and direction of the Court, as to any of the matters alleged in the bill, and the only objection is, that the bill is complicated and multifarious, it may be removed by amendment. Or if it should appear, that the plaintiffs have a good claim for equitable aid and relief as to some of the matters set out in the bill, and not as to others, the demurrer should be overruled, unless the bill be multifarious. The only question of importance, therefore, to be determined on this demurrer, is, whether the plaintiffs are entitled to the aid and directions of the Court in any subject matter of the bill.

The general principle on which relief and direction are claimed, is, that trustees are entitled to the protection of a court of equity in the execution of their trusts. This is a familiar principle of equity, and ought to be liberally applied in all cases where the security of trustees, acting fairly, may require the application. Whenever a trustee doubts as to his safety and security in complying with any claim of a cestui-que-trust, or doubts as to any other matter arising in the execution of his trust, his only prudent and safe course is, to wait for

the directions of a court of equity. The common course in such cases is, for the trustee to decline acting without such a sanction, leaving the cestui-que-trust to bring his bill to compel the execution of the trust. But it does not seem to be material, whether the trustee be a plaintiff or a defendant in the suit, the object of the application to the court being in either case the same.

In the case of *Brooks* v. *Reynolds*, 1 Bro. C. C. 183, it appears that certain trustees under a will had filed a bill against the plaintiff, Brooks, for the direction and indemnity of the court in executing their trusts ; and by the decree the will was established, proper accounts were directed, and it was ordered that the personal estates not specifically bequeathed should be applied to the payment of debts, &c. ; and in case of any deficiency, any of the creditors should be at liberty to apply to the court for further directions. A suit was afterwards brought by a bond creditor, and thereupon Brooks, the defendant in the first suit, brought his bill to restrain the creditor from proceeding at law, and an injunction was granted. It was objected in that case, as it is in this, that the bill was filed by the trustees, and that it had not the same effect as a bill filed by a creditor ; in which case there would be an order for the creditors to come in. But the chancellor thought there was no difference.

So in the case of *Curteis* v. *Chandler*, Maddock & Geldart, 123, which was a suit by a trustee for the execution of the trust under the direction of the court, the bill was sustained, and the general principle was laid down, that a trustee has a right to the protection of the court in the execution of his trust. There are exceptions, it is said, as where the act required to be done leads to no responsibility, and the motive of the trustee is obviously vexatious. But it is added, if the trustee would have been entitled to the assistance of the court as a defendant, it could not be denied him because he asked it as plaintiff.

In *Buccle* v. *Atleo*, 2 Vern. 37, the plaintiff, being executor, brought a bill against all the creditors, to the intent they might, if they would, contest each other's debts, and dispute who ought to be preferred in payment. One of the creditors

Dimmock
v.
Bixoy.

demurred, for that the bill contained multiplicity of matter But the demurrer was overruled ; and it was held, that the bill was well brought, and that it was a safe way for an execu tor to take.

This case is noticed by Lord *Talbot*, in the case of *Mor rice* v. *The Bank of England*, Cas. Temp. Talbot, 224, and he remarks, that bills of that kind had been discountenanc ed, because the court was satisfied, that they had no right to take away the preference that one creditor might gain over another by his legal diligence ; and because such bills might be made use of by executors, to keep people out of their money longer than they would otherwise be, yet he sus tained the bill in *Morrice* v. *The Bank of England*, which prayed for protection and indemnity in making payment ac cording to the decree of the court, the plaintiff being an ex ecutrix, and that the defendants should be restrained from pro ceeding at law. Lord *Eldon* also, in *Rush* v. *Higgs*, 4 Ves. 638, seems to doubt the decision in *Buccle* v. *Atleo*, and asks how a suit can be brought against all the creditors. But in neither of these cases, nor in any other that I am aware of, is it doubted, that an executor or trustee is enti tled to the protection of the court and their directions in the execution of his trust, in a case reasonably requiring such directions. The Court doubtless would discountenance a bill brought for the purpose of delaying creditors in receiving their debts, or which otherwise might be injurious to the cestui-que-trust. But no such objection can be made to the present bill. Some of the questions raised are not free from doubt and difficulty, which it might be unsafe for the trustees to decide, without the directions of the Court, which we think they have a right to claim ; and that they were not obliged to wait until they should be sued by the cred itors, which might occasion unnecessary delay ; for no action would lie against the trustees until the funds should be col lected and ready for distribution, or the trustees should have in some respect violated their duty.

It is objected, that a case for relief is not set forth in the bill, because it does not appear that the trustees can be involved by mistake in any responsibility, as they are not lia-

ole to the creditors separately, either at law or in equity. It is true, that creditors must join in a bill brought for the purpose of compelling a distribution of the trust fund ; but if the trustees should violate their trust, by mistake or otherwise, to the injury of a particular cestui-que-trust, he would have his remedy in equity.   So if there should be a breach of the plaintiffs' covenants, to the injury of any one of the covenantees, he could maintain an action at law without joining the other covenantees.   For though a covenant to several be joint in its terms, yet if the interest and cause of action of the covenantees be several, and not joint, the covenant shall be taken as several, and each one may recover for his particular damage.

Then as to the other objection, that the bill is multifarious, it is said, that it demands several matters of different natures, against several defendants, thereby loading them with an unnecessary burden of costs.   A demurrer for this cause will hold only where the plaintiff claims several matters of a different nature, and not where one general right is claimed by the plaintiff, although the defendants may have separate and distinct rights.   This bill prays relief and directions as to the conflicting claims of the creditors, and as to the order in which they are to be paid ; and it prays relief against the debtors, and seeks to enforce the claims of the plaintiffs against them. These two branches of the bill are founded on distinct rights, and ought not to have been joined.

But the only debtors named in the bill are the Commercial Bank and Joseph Hibbert of St. Domingo ; and the bill has been dismissed as to the former, and it does not appear that the latter is within the jurisdiction of the Court.   If, however, he has become a party, the bill is to be dismissed as to the claim upon him, and the objection to the form of the bill no longer holds.

*Demurrer overruled.*