Commonwealth of Pennsylvania et al., Appellants
*v.* Allison Rich et al., Appellees.

Commonwealth of Pennsylvania and City of Philadelphia *v.* Paul Harris et al.  City of Philadelphia, Appellant.

Argued March 3, 1981, before President Judge CRUMLISH, JR. and Judges WILKINSON, JR., MENCER, ROGERS, CRAIG, MACPHAIL and PALLADINO.

*Maxine J. Stotland,* Assistant District Attorney, with her *Steven H. Goldblatt,* Deputy District Attorney, and *Edward G. Rendell,* District Attorney, for appellant, Commonwealth of Pennsylvania.

*Michael A. Seidman,* for appellee, Allison Rich.

*Joseph N. Bongiovanni, III,* for appellee, Darryl Edwards a/k/a David Gemza.

*Norman A. Oshtry,* with him *Judith S. Eden,* for appellees, Betty Jane Allsup, Linda Jackson, Fred Vennell, Robert Lee Bradford, and Julia Rieman.

*Alan J. Davis,* City Solicitor, with him *Judith N. Dean,* Deputy City Solicitor, for appellant, City of Philadelphia.

*Joan Botto Williamson,* for appellee, Paul Harris.

*Michael A. Seidman,* for appellees, Robert Goldsmith and Joseph Steiner.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., December 1, 1981:

The Commonwealth of Pennsylvania and the City of Philadelphia appeal a Philadelphia Court of Common Pleas decision[1] which struck down as unconstitutional and preempted Philadelphia's Obscenity Ordinance (Ordinance)[2] and discharged appellees. We reverse and remand for proceedings consistent with this opinion.

---

[1] These cases on appeal and transfer from Municipal Court were consolidated for trial before Judge MIRARCHI, per order of Judge BRADLEY dated April 20, 1978.

[2] Philadelphia, Pa. Code, Ch. 10 §1100 (1977).

## PREEMPTION

The State Obscenity Act[3] (Act) is silent on the issue of preemption, leading us to ascertain the intent of the legislature. If the general tenor of the Act reflects an intent to prohibit local ordinances, we are bound to follow that intention. *United Tavern Owners of Philadelphia v. Philadelphia School District,* 441 Pa. 274, 272 A.2d 868 (1971). Our review of the statute reveals neither an express nor implied legislative intention to prevent municipalities from enacting supplemental pornography legislation.[4] Thus, *United Taverns* requires us to compare these two enactments for inconsistencies or contradictions. We disagree with the court below when it held that the City's Ordinance is preempted because it "conflict[s] materially" with the Commonwealth's legislation.

Initially, the trial court held that the Ordinance's definition of community standards reading:

'the standards of the community from which the jury is drawn or would be drawn if it were the trier of fact' ch. 10 §1102(3),

is inapposite to the Act which defines community as "the state," 18 Pa. C. S. §5903(b). This conclusion is erroneous. The Act is necessarily broader in conception. In practical effect, they are identical. The United States Supreme Court in *Hamling v. United States,* 418 U.S. 87 (1974), wrote:

[A]s a matter of constitutional law and federal statutory construction . . . a juror sitting in ob-

---

[3] The State Obscenity Act, 18 Pa. C. S. §5903.

[4] The subsequent legislative history strongly indicates that not only was the legislature cognizant of the ordinance, but was concerned that certain provisions of the state legislation might cause confusion when read in conjunction with the Philadelphia ordinance. *See* Senate Report of Committee of Conference, S.B. No. 544 (1980), which clarified the intent of the legislature to have the state provisions for a jury trial be applicable only to trials in the Court of Common Pleas, not in Municipal Court.

scenity cases [is] to draw on knowledge of the *community or vicinage from which he comes* in deciding what conclusion, 'the average person, applying contemporary community standards' would reach in a given case. (Emphasis added.) *Id.* at 105.

In application, the State's and City's standards produce identical results. Since the juries in the Commonwealth are not drawn from statewide populations but are a local fact finder, they must *necessarily* draw on knowledge of a local vicinage.

Secondly, the lower court concluded that the penalty provisions[5] of the Ordinance are at odds with the Act. In *Western Pennsylvania Restaurant Association v. Pittsburgh,* 366 Pa. 374, 77 A.2d 616 (1951), our Supreme Court held that a municipality may promulgate regulations that are "in aid and furtherance of the purposes of the general law as may seem appropriate to the necessities of the particular locality and which are not in themselves unreasonable." *Id.* at 381, 77 A.2d at 620. In light of the legislative finding and purpose of the Ordinance, *i.e.,* to prevent "[t]he continued operation of . . . activities [which are] detrimental to the health, safety, convenience, good morals and general welfare of the City of Philadelphia . . . ,"[6] the penalty provisions are not unreasonable, nor do they appear to usurp or contradict any state provision.[7]

---

[5] Ch. 10, §1105, which provides for fines not to exceed $300.00, or imprisonment not to exceed 90 days, or both, for any violation of this Ordinance.

[6] Ch. 10, §1101(1).

[7] In fact the penalty provisions of the Act have since been amended to allow for criminal prosecution as an alternative means of enforcement. *See* Senate Report of Committee of Conference, S.B. No. 544 (1980), where the Committee observed, "The present Anti-Obscenity Law is almost useless because it is practically impossible to enforce . . . Senate Bill No. 544 would give law enforcement of-

Next, the lower court found that the Ordinance materially conflicts with the Act's jury trial provisions since the City's regulation prosecutes defendants in the Philadelphia Municipal Court without a jury.[8] We cannot agree. Philadelphia's two-tier court system, which all parties acknowledge is constitutional, provides all defendants with an opportunity for a jury trial de novo in the Philadelphia Court of Common Pleas.[9] Defendants cited under this Ordinance suffer no constitutional deprivation since they have an absolute right to a jury trial at the second tier.

We conclude[10] that the Philadelphia Ordinance has not been preempted by State law.[11]

## CONSTITUTIONALITY OF THE ORDINANCE

Initially, Appellants argue that the lower court erred in concluding that the Ordinance is unconstitu-

---

ficials the tool they need to crack down on offenders—direct criminal prosecution, whether or not a specific book or movie is enjoined". Thus, it would appear that the ordinance was merely more farsighted than the Act in terms of providing effective penalties.

[8] See footnote 4 supra, wherein the legislature explained that the Act's provision for a jury trial was never intended to apply to Municipal Court proceedings.

[9] See Pa. R. Crim. P. 6001 and 6006.

[10] Strongly supporting, but not controlling our reasoning is the 1980 Amendment to this Act which states:

Nothing in this chapter shall be construed to invalidate, supersede, repeal or preempt any ordinance or resolution of any political subdivision insofar as it is consistent with this chapter, and political subdivisions further retain the right to regulate any activities, displays, exhibitions, or materials not specifically regulated by this chapter. 53 Pa. C. S. §5903(k).

[11] We find no merit in the lower court's conclusion that the Ordinance attempts to invest the City Solicitor with illegal prosecutorial authority. Under Pa. R. Crim. P. 63(d), the City Solicitor, with the permission of the Commonwealth's attorney, may prosecute summary violations of municipal ordinances. This was the case in the prosecutions at issue.

tional for failure to define the term "prurient interest."

In *Miller v. California,* 413 U.S. 15 (1973), the Supreme Court established broad constitutional parameters for pornography legislation. Our review of the Ordinance reveals no constitutional deviation from the *Miller* precepts. Section 1102 of the Ordinance, Ch. 10, §1102, provides the factfinder with clear guidelines for determining what is obscene[12] and explicitly defines "patently offensive."[13] We can find no consti-

---

[12] Ch. 10 §1102 reads in pertinent part:

(1) 'Obscene' means that which is determined as obscene applying the following guidelines:

(a) Whether the average person applying contemporary community standards would find that the subject matter taken as a whole appeals to the prurient interest;

(b) Whether the subject matter depicts or describes in a patently offensive way sexual conduct, of a type hereinafter described; and

(c) Whether the subject matter taken as a whole lacks serious literary, artistic, political or scientific value.

[13] Ch. 10 §1102 provides in pertinent part:

(2) 'Patently offensive,' means so offensive on its face as to affront current standards of decency, and shall be deemed to include any of the following described forms of sexual conduct, if they are depicted so as to affront current standards of decency:

(a) An act of sexual intercourse, normal or perverted, actual or simulated, real or animated, including genital-genital, anal-genital or oral-genital intercourse, whether between human beings or between a human being and an animal.

(b) Sadomasochistic abuse meaning flagellation or torture or sexual gratification, by or upon a person who is nude or clad in undergarments or in a revealing costume, or the condition of being fettered, bound or otherwise physically restrained on the part of the one so clothed.

(c) Masturbation, excretory functions, and lewd exhibition of the genitals, including any explicit close-up representation of a human genital organ or spread-eagle exposure of female genital organs.

tutional requirement that "prurient interest," a term of art commonly utilized in the obscenity context be more specifically defined.[14]

Our resolution of this controversy demands we address whether the Ordinance is unconstitutional for failing to provide defendants with a jury trial in Municipal Court. Appellees contend that a single Municipal Court judge cannot constitutionally apply an obscenity standard.[15] We disagree.

The procedures for judging obscenity must reflect " 'the necessary sensitivity to freedom of expression.' " *McKinney v. Alabama,* 424 U.S. 669, 674 (1976), quoting *Freedman v. Maryland,* 380 U.S. 51, 58 (1965). As the Supreme Court implied in *Miller,*

---

(d) Physical contact or simulated physical contact with the clothed or naked pubic area of buttocks of a human male or female or the breasts of a female, whether alone or between members of the same or opposite sex, or between humans and animals in an act of apparent sexual stimulation or gratification.

(e) A device designed and marketed as useful primarily for stimulation of the human genital organs.

(f) Male or female genitals in a discernibly turgid state.

(g) Fellatio, cunnilingus, anal sodomy, seminal ejaculation, or any excretory function.

[14] We note that other statutes almost identical to this Ordinance have withstood constitutional attack, *see Film Follies, Inc. v. Haas,* 22 Or. App. 365, 539 P.2d 669 (1975), *appeal dismissed,* 426 U.S. 913 (1976) ; *Commonwealth v. 707 Main Corp.,* 37 Mass. 374, 357 N.E.2d 753 (1976).

[15] Appellees urge us to follow the holding of the Supreme Court of Missouri in *Kansas City v. Darby,* 544 S.W. 2d 529 (1976), *cert. denied,* 431 U.S. 935 (1977). The Court held that in obscenity cases a defendant must have a jury trial at the first tier. We do not choose to follow this holding, in that we find the specificity of the ordinance and the right to a jury trial at the second tier sufficiently protective of a defendant's rights. We also note that the Kansas City procedure did not allow defendants to by-pass the first tier non-jury trial. This is not the case in Philadelphia as noted in n. 16, *infra.*

this freedom is adequately protected when a Judge is the fact finder:

> The adversary system, with lay jurors as the *usual ultimate fact finders* in criminal prosecutions, has historically permitted triers of fact to draw on the standards of their community, guided always by limiting instructions on the law. (Emphasis added.)

*Id.* at 30.

More specifically, the Supreme Court has held that there is no constitutional right to a jury trial in state civil proceedings for an adjudication of what is obscene material. *Alexander v. Virginia*, 413 U.S. 836 (1973). We are convinced that a defendant's right to trial by jury is not compromised by a two-tier prosecutorial system. A defendant who questions the Judge's application of the obscenity standard at the first tier has the absolute right to a de novo jury trial in Common Pleas Court.[16] Considering these circumstances, we find no constitutional deprivation.[17]

We conclude that the Philadelphia Obscenity Ordinance is constitutional and is not preempted by state law.[18]

Reversed and remanded.

---

[16] The Philadelphia two-tier system is constitutional, *see Ludwig v. Massachusetts*, 427 U.S. 618 (1976). A defendant may obtain a jury trial by transferring from Municipal Court, Pa. R. Crim. P. 6001, or may obtain a trial de novo of right in Common Pleas Court by appealing a verdict of guilty in Municipal Court, Pa. R. Crim. P. 6006.

[17] Our conclusion is supported by *Duncan v. Louisiana*, 391 U.S. 145 (1968), which held that there is no right to a jury trial for prosecutions for petty offenses. Clearly, a violation of the Philadelphia Ordinance is a petty offense in light of the penalty provisions, *see* n. 5, *supra*.

[18] The appellees raised numerous other challenges to the procedure and enforcement of this statute. In that we find none of these claims to have merit, we will not address them here.

## ORDER

The decision of the Philadelphia County Court of Common Pleas dated July 28, 1978, per MIRARCHI, A.J., is reversed and these cases are remanded for proceedings consistent with this Opinion.

Judges MENCER and MACPHAIL dissent.

Judge WILKINSON, JR. did not participate in the decision in this case.