**Raymond BROWN, d/b/a Hometown Pharmacy, and Video Concessions, Inc.**

**v.**

**PORNOGRAPHY COMMISSION OF LOWER SOUTHAMPTON TOWNSHIP, Board of Supervisors of Lower Southampton Township, Lower Southampton Township, Charles Raudenbush, Henry Jacobson, Warren Hazelton, Sue McKeon, Daniel Fraley, Dennis O'Brien, Leonard Hardy, John Dietterle, Maurice Novoseller, Elroy Simons, George Williams, Mary Ellen Fecca and Patrick Rafferty, in their official capacities.**

No. 84–4630.

United States District Court,
E.D. Pennsylvania.

Oct. 21, 1985.

Joseph A. Dworetzky, Peggy L. Snodgrass, Philadelphia, Pa., for plaintiffs.

Robert L. Lansberry, Doylestown, Pa., for Pornography Com'n.

Daniel J. Lawler, Feasterville, Pa., for Lower Southampton Twp., et al.

## MEMORANDUM

O'NEILL, District Judge.

Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 and the First and Fourteenth Amendments of the Constitution. They challenge the validity of a number of anti-pornography ordinances adopted by Lower Southampton Township, Bucks County, Pennsylvania, and seek declaratory and injunctive relief and damages.

The present application for a permanent injunction concerns only the two ordinances currently in effect in the Township, Ordinances Nos. 237 and 339. A hearing has been held, briefs filed and oral argument presented. This memorandum will serve as my findings of fact and conclusions of law.

## I.

Plaintiff Raymond Brown resides in Philadelphia, Pennsylvania, and owns Hometown Pharmacy, a sole proprietorship located at 200 Bustleton Avenue, Feasterville, Lower Southampton Township, Bucks County, Pennsylvania. For over 20 years, Hometown has been selling prescription and nonprescription drugs, health care and beauty products, camera film, greeting cards, school supplies and numerous other items customarily sold by drug stores.

Plaintiff Video Concessions is a Pennsylvania corporation engaged in the rental of videocassette films and recorder machines and the sale of blank videocassette tapes. In March, 1982, Video Concessions entered into an agreement to supply Hometown with a full range of videocassettes, videocassette recorder machines and blank tapes, and to provide Hometown with certain marketing assistance. Hometown agreed to provide the labor and floor space necessary to display, rent and/or sell these products. Pursuant to this agreement, Hometown set up a display of videocassettes and a separate check-out counter in one corner of its store. This display area and check-out counter comprises approximately 200 square feet of Hometown's 4,500 square feet of total floor space. Hometown received a commission from Video Concessions based upon Hometown's gross videocassette rental receipts.

Defendant Lower Southampton Township is a second class township organized under the laws of the Commonwealth of Pennsylvania. Defendant Board of Supervisors is the duly constituted executive authority of the Township as provided for in 53 Pa.Stat.Ann. §§ 22101–25851. Defendant Pornography Commission was appointed by the Board of Supervisors on August 29, 1974, pursuant to the provisions of an anti-pornography ordinance, No. 235, for the purpose of implementing and enforcing certain of the provisions of another anti-pornography ordinance, No. 236. As a result of the repeal of Ordinances Nos. 235 and 236, the Pornography Commission was abolished on September 26, 1984.

The amended complaint names thirteen individual defendants, all of whom are residents of the Township. Defendants Charles Raudenbush, Henry Jacobson, Daniel Fraley and Dennis O'Brien have been members of the Board of Supervisors from January 1978, 1980, 1982 and 1984, respectively, to the date of the hearing on this motion. Defendant Warren Hazelton was a member of the Board of Supervisors from mid–1981 through June 12, 1984. Defendants Leonard Hardy, Maurice Novoseller, Elroy Simons, George Williams and Patrick Rafferty were members of the Pornography Commission from January 1, 1982, through September 26, 1984. Defendant Mary Ellen Fecca was a member of the Pornography Commission from January, 1983, through September 26, 1984. Defendant Joseph Dietterle was a member of the Pornography Commission from January 1, 1982, through March 13, 1984.

Beginning in March, 1982, Video Concessions supplied Hometown with general release films and with so-called "adult films" or X-rated videocassettes.[1] Throughout the period during which Hometown rented adult videocassettes to its customers, it maintained procedures intended to ensure that such films would be rented only to adults.[2] In accordance with its policy, neither Hometown nor Video Concessions at any time advertised, either on or off Home-

---

1. The Motion Picture Association of America assigns an X-rating to those films which it recommends be viewed only by adults, age 17 or older.

2. Hometown required that (1) all videocassettes be stored in plain black boxes in a display case accessible only to employees; (2) all adult film videocassettes be ordered by numerical code made available only upon specific customer request; (3) no adult videocassettes picture jackets, posters or other such advertising material be displayed inside or outside the store; and (4) no adult film videocassettes be rented except upon presentation of proper identification showing the customer to be at least 21 years of age and after a $75.00 deposit payable by cash or charged to a major credit card. There is no evidence of lack of conformity to these procedures.

town's premises, Hometown's adult film selections, with the exception of the display inside the pharmacy of two three-inch by five-inch index cards stating "adult catalog available upon request. Must be over twenty-one years of age." Although Hometown had a videocassette recorder on its premises for use in checking videocassettes for damage or malfunction, it prohibited the viewing of adult videocassettes on its premises and there is no evidence that any such viewing occurred or that any adult videocassette was leased to a minor.

On or about June 4, 1982, Brown was served with an ordinance violation notice issued by the Township charging Hometown with violation of Ordinance 235.[3] Upon receipt of this notice, Hometown ceased all rentals of adult videocassettes and requested a hearing before the Pornography Commission to determine whether the films in question were pornographic as defined in the Ordinance.

At this hearing, in June of 1982, William Share, Vice-President of Video Concessions, was informally advised by the Commission through defendant member Novoseller and another member that if Hometown withdrew its request for a hearing and determination and refrained from renting adult films during a two to three month "cooling-off" period, the Township would not object to Hometown's resumption of rentals of adult films. Hometown withdrew its request and, in September 1982, resumed rentals of adult videocassettes, which rentals continued uninterrupted until March 12, 1984. During early 1984, Hometown received substantial income from its adult videocassette rentals.

On March 13, 1984, shortly before service of a second ordinance violation notice charging Hometown with violation of Township Ordinance Nos. 235, 236[4] and 237[5], Brown learned from an article in the *Bucks County Courier Times* of the decision of the Commission to recommend to

---

3. Ordinance No. 235 made illegal the sale or lease of "pornographic material" to persons under 18 years of age and established a seven-member Pornography Commission authorized to review material submitted to it in order to determine whether it was "pornographic" as defined by the Ordinance, and to enforce the provisions of the Ordinance, which further required that all pornographic material be registered with the Commission prior to its sale or lease in the Township. Any person aggrieved by a final decision of the Commission could appeal to the Court of Common Pleas of Bucks County. A violator of this Ordinance was subject to fine, costs of prosecution, and in default of payment thereof, imprisonment. No. 235 was repealed on September 26, 1984.

4. Ordinance No. 236 established a system for the registration of pornographic material, as defined by Ordinance No. 235, and of would-be buyers, sellers and renters of such material, for the stated purpose of "[regulating] the sale of Pornographic material so as to enforce the prohibition of the sale of Pornographic material to persons under 18 years of age...."

Under ordinance No. 236, sellers/lessors' applications were required to set forth:

(1) the name and address of the applicant; and

(2) prior criminal convictions if any of the applicant for the following offenses:

(a) Rape; Assault with intent to Rape or Ravish; Statutory Rape; or

(b) Corrupting the Morals of a Minor, Contributing to the Delinquency of a Minor; or

(c) Unlawful sale or distribution of Pornographic material.

Ordinance No. 236 further required that each piece of pornographic material offered for sale or lease be registered with the Pornography Commission and the Lower Southampton Police Department prior to any sale, lease or purchase and that each such piece of pornographic material be labeled with the name and address of the seller/lessors, the serial number assigned by the Pornography Commission and the name or permit number of the buyers/lessees. Sellers/lessors were also required to keep a journal of pornographic material sold or leased and to report such transactions on a weekly basis to the Pornography Commission and the Police Department. Violators of No. 236 were made subject to fine, costs of prosecution, and in default of payment thereof, imprisonment. No. 236 was repealed on September 26, 1984.

5. Ordinance No. 237, adopted by the Supervisors on August 29, 1974, amended the Township's Zoning code to ban from the commercial, planned business, and controlled commercial districts any "theatre or place of amusement or store specializing in the sale of adult products, or store commonly referred to as 'Adult Book Store' ... where there is sold on the premises pornographic material as defined under Ordinance No. 235...." Under No. 237, such businesses are restricted to the planned industrial districts of the Township.

the Supervisors that Hometown be served with the violation notice. As a result, Brown directed Video Concessions to remove all adult videocassettes from Hometown's premises, and ceased all rentals of such videocassettes as of March 13, 1984. But for the reported action of the Pornography Commission in voting to recommend issuance of the violation notice, Hometown would not have discontinued its rentals of adult videocassettes. Video Concessions has at all times remained able and willing to supply such cassettes to Hometown. Since March 13, 1984, Hometown has experienced a reduction in revenues from its videocassette rentals and from its non-videocassette sales.

On September 5, 1984, defendant LaRosa, Township Manager, and defendant Charles Raudenbush, Jr., Chairman of the Board of Supervisors, wrote letters[6] to Bucks County District Attorney Michael Kane reporting that the Board had received complaints from residents concerning Hometown's and Video Concession's sale and rental of X-rated videocassettes.[7] The letters requested the District Attorney to opine whether the sale and rental of these videocassettes constituted a violation of The State Obscenity Act, 18 Pa.Cons.Stat. Ann. § 5903. In a letter dated September 12, 1984, Mr. Kane replied "... that there is apparently no obvious violation of the [Pennsylvania] crimes code relating to the activity you describe."[8]

Plaintiffs filed their complaint on the afternoon of September 26, 1984. That evening, the Supervisors adopted Ordinance No. 338 repealing Ordinances Nos. 235 and 236. Furthermore, notwithstanding Mr. Kane's letter, the Supervisors unanimously voted to request Bucks County Assistant District Attorney Rubenstein to file a criminal action against Hometown and directed Township Solicitor Daniel J. Lawler to write to Mr. Kane requesting that he take such action immediately. Following receipt of Mr. Lawler's letter dated October 11, 1984, Mr. Kane again informed defendants, by letter, that Hometown was not in violation of state law and that no prosecution would be instituted. On November 14, 1984, the Supervisors enacted another pornography Ordinance, No. 339, which amended the Township Zoning Code. This Ordinance forbids the commission of acts of the type proscribed by 18 Pa.Cons.Stat. Ann. § 5903 in commercial, controlled commercial, and planned business districts, but subject to some restrictions,[9] permits such acts in planned industrial districts.

Plaintiffs seek a declaratory judgment invalidating Ordinances Nos. 237 and 339 as violative of the First and Fourteenth Amendments and an order permanently (i) enjoining defendants from enforcing Ordinances Nos. 237 and 339 to the extent that the Ordinances prohibit or interfere with Hometown's rental of adult videocassettes

**6.** The Chief of Police of the Township, Edward Wunsch, Sr., wrote a similar letter to Mr. Kane dated September 12, 1984.

**7.** The letter from LaRosa included a list of three X-rated films, "Sulka's Wedding", "Taboo II" and "Babylon Gold", which had been sold or leased at Hometown.

**8.** Mr. Kane reasoned (1) the Motion Picture Association of America's X-rating does not itself make the videocassettes obscene within the meaning of the State Obscenity Act; (2) even if the videocassettes were obscene, the videocassettes would be protected in the privacy of one's home by the First and Fourteenth Amendments to the United States Constitution, citing *Stanley v. Georgia*, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); and (3) the Act proscribes the public display of obscene materials and their dissemination to minors, but neither had

been alleged against Hometown and Video Concessions.

**9.** "All activities of the type which are proscribed by the Title 18 Pennsylvania Consolidated Statutes Annotated Section 5903

shall be permitted in [planned industrial districts] provided:

(i) The building or structure of such use shall be located no closer than 500 feet from any other building or structure having a school, church, recreational, religious, institutional and/or educational use;

(ii) No such use shall be located within 2,000 feet of a similar use;

(iii) No materials shall be visible from any window or door; and

(iv) No sale, rental or use of materials shall be made to persons under the age of 17 years."

**1206**

to adults at its present business location, and (ii) enjoining the Township, its supervisors and Pornography Commission, and all individual defendants acting in their official capacities from harassing plaintiffs or retaliating against them for their challenges to Ordinance Nos. 235, 236, 237 or 339 or for any other reason.

## II.

■ We first consider the questions whether this matter is ripe for adjudication and whether the Court should abstain.[10]

### A.

In determining whether plaintiffs have alleged a case or controversy within the meaning of Article III of the Constitution

"[t]he basic inquiry is whether the 'conflicting contentions of the parties ... present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract.' *Railway Mail Assn. v. Corsi,* 326 U.S. 88, 93 [65 S.Ct. 1483, 1487, 89 L.Ed. 2072] (1945).

"A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement. But '[o]ne does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending that is enough.' *Pennsylvania v. West Virginia,* 262 U.S. 553, 593 [43 S.Ct. 658, 663, 67 L.Ed. 1117] (1923).

"When contesting the constitutionality of a criminal statute, 'it is not necessary that [the plaintiff] first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute that he claims deters the exercise of his constitutional rights, *Steffel v. Thompson,* 415 U.S. 452, 459 [94 S.Ct. 1209, 1216, 39 L.Ed.2d

505] (1974); When the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he 'should not be required to await and undergo a criminal prosecution as the sole means of seeking relief.' *Doe v. Bolton,* 410 U.S. 179, 188 [93 S.Ct. 739, 745, 35 L.Ed.2d 201] (1973). But 'persons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs.' *Younger v. Harris,* 401 U.S. 37, 42 [91 S.Ct. 746, 749, 27 L.Ed.2d 669] (1971); When plaintiffs 'do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible,' they do not allege a dispute susceptible to resolution by a federal court. *Younger v. Harris, supra,* at 42 [91 S.Ct. at 749]."

*Babbitt v. United Farm Workers Nat. Union,* 442 U.S. 289, 298–99, 99 S.Ct. 2301, 2308–09, 60 L.Ed.2d 895 (1979) [some citations omitted].

■ Defendants contend that this matter is not ripe for adjudication because (1) the Township's only official action was to serve Hometown with an ordinance violation notice pursuant to the now repealed Ordinance No. 236;[11] (2) the Township has not attempted to enforce Ordinances Nos. 237 and 339; and (3) even if the Township proceeds to enforce those ordinances against plaintiffs, they have a right of appeal to the zoning hearing board and thereafter to the Court of Common Pleas.

However, the parties have stipulated that:

"Defendants would, in the event Hometown resumed rentals of adult film video-

---

10. Plaintiffs have standing because they are asserting their own legal rights and interests and not those of others. *Warth v. Seldin,* 422 U.S. 490, 499–500, 95 S.Ct. 2197, 2205–06, 45 L.Ed.2d 343 (1975); *accord City of Los Angeles v. Lyons,* 461 U.S. 95, 101–10, 103 S.Ct. 1660, 1664–69, 75 L.Ed.2d 675 (1983).

11. The March 27, 1984, Ordinance Violation Notice served on plaintiffs stated that Hometown was in violation of Nos. 235, 236 and 237.

cassettes, enforce Ordinances Nos. 237 and 339 against Hometown so as to prevent its rental of adult film videocassettes to consenting adults at its present business location."

*Joint Stipulation as to Certain Facts and Exhibits,* ¶ 21. Despite defendants' first and second contentions, their agreement that they would enforce Nos. 237 and 339 against Hometown if Hometown resumed rental of adult videocassettes creates a present and realistic danger that Hometown will be cited for violation of the Ordinances.

■■■ Defendants' third argument, that the case is not ripe because plaintiffs have a right of appeal, is misplaced for two reasons. First, the right to a subsequent appeal does not affect the immediacy of the conflict between the parties. Second, plaintiffs need not exhaust administrative remedies prior to instituting a § 1983 action. *Patsy v. Board of Regents of State of Florida,* 457 U.S. 496, 102 S.Ct. 2537, 73 L.Ed.2d 172 (1982).

### B.

"Abstention is a judicially created doctrine under which a federal court will decline to exercise its jurisdiction so that a state court or state agency will have the opportunity to decide the matters at issue. The doctrine was born out of a concern for the maintenance of our federal system; seeking to avoid unnecessary conflicts between the federal judiciary and state government. *See Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496, 500–02, 61 S.Ct. 643, 645, 85 L.Ed. 971 (1941). However, the Supreme Court has recognized that abstention is an 'extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.' "

*Heritage Farms, Inc. v. Solebury Township,* 671 F.2d 743, 746 (3d Cir.), *cert. denied,* 456 U.S. 990, 102 S.Ct. 2270, 73

L.Ed.2d 1285 (1982), *quoting from County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1062–63, 3 L.Ed.2d 1163 (1959). The Court has recognized three situations in which abstention is permissible. *See, generally, Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813–17, 96 S.Ct. 1236, 1244–46, 47 L.Ed.2d 483 (1976).

■ Under the first type, *Younger* abstention,[12]

"abstention is appropriate where, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings, state nuisance proceedings antecedent to a criminal prosecution, which are directed at obtaining the closure of places exhibiting obscene films, or collection of state taxes."

*Colorado River Water Conservation Dist. v. United States,* 424 U.S. at 816, 96 S.Ct. at 1245 [citations and footnotes omitted]. Because there is no criminal or quasi-criminal state proceeding pending against plaintiffs, *Younger* absention is inappropriate.

■ The second type of abstention, *Burford* abstention,[13] may be involved "where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar." *Colorado River Water Conservation Dist.,* 424 U.S. at 814, 96 S.Ct. at 1244. For example, the Supreme Court has abstained in a case involving a challenge to the scope of a municipality's eminent domain power under state law, *Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959), and in a suit seeking review of the reasonableness under Texas law of a State Commission's permit to drill oil wells, *Burford v. Sun Oil Co.*

Defendants argue that *Burford* abstention is warranted because plaintiffs' suit is an attempt to interfere with the state's

---

**12.** *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

**13.** *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

regulation of land use by circumventing the Commonwealth's zoning law and appeals procedures set forth in the Municipalities Planning Code. However, there is no uniform state-wide policy or regulation for land use under the Pennsylvania Municipalities Planning Code, 53 Pa.Stat.Ann. § 10101 *et seq.;* land use policies differ from municipality to municipality under the Code. *Heritage Farms, Inc. v. Solebury Township,* 671 F.2d at 747. Moreover, this case is more than a land use case; it involves zoning that arguably impairs plaintiffs' rights of free speech and expression. *Burford* does not require us to abstain.

The third type of abstention, *Pullman* abstention,[14] is the most likely to be applicable to this case. The Supreme Court recently summarized this doctrine as follows.

"In *Railroad Comm'n v. Pullman Co.,* [312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941)], this Court held that federal courts should abstain from decision when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided. By abstaining in such cases, federal courts will avoid both unnecessary adjudication of federal questions and 'needless friction with state policies....' *Id.,* 312 U.S., at 500, 61 S.Ct. at 645. However, federal courts need not abstain on *Pullman* grounds when a state statute is not 'fairly subject to an interpretation which will render unnecessary' the federal constitutional question. *See Harman v. Forssenius,* 380 U.S. 528, 535, 85 S.Ct. 1177, 1182, 14 L.Ed.2d 50 (1965). *Pullman* abstention is limited to uncertain questions of state law because '[a]bstention from the exercise of federal jurisdiction is the exception, not the rule.' *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976)."

*Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, ——, 104 S.Ct. 2321, 2327, 81

L.Ed.2d 186 (1984). The Court further emphasized:

"[T]he relevent inquiry is not whether there is a bare, though unlikely, possibility that state courts *might* render adjudication of the federal question unnecessary. Rather, '[w]e have frequently emphasized that abstention is not to be ordered unless the statute is of an uncertain nature, and is obviously susceptible of a limiting construction.' *Zwickler v. Koota,* 389 U.S. 241, 251, and n. 14, 88 S.Ct. 391, 397, and n. 14, 19 L.Ed.2d 444 (1967)."

467 U.S. at ——, 104 S.Ct. at 2327.

In the context of First Amendment challenges to a state statute, "... to force the plaintiff who has commenced a federal action to suffer the delay of state court proceedings might itself effect the impermissible chilling of the very constitutional right he seeks to protect." 389 U.S. at 252, 88 S.Ct. at 397; *see also Procunier v. Martinez,* 416 U.S. 396, 404, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1974) (abstention exacts a "high cost ... when the federal constitutional challenge concerns facial repugnance to the First Amendment"). In that event, "free expression—of transcedent value to all society, and not merely to those exercising their rights—might be the loser." *Dombrowski v. Pfister,* 380 U.S. 479, 486, 85 S.Ct. 1116, 1121, 14 L.Ed.2d 22 (1965). We further note that other courts have found *Pullman* abstention inappropriate where there is a First Amendment challenge to an anti-pornography ordinance. *See, e.g., Playtime Theaters, Inc. v. City of Renton,* 748 F.2d 527, 532 (9th Cir.1984), *cert. granted on other grounds,* —— U.S. ——, 105 S.Ct. 2015, 85 L.Ed.2d 297 (1985).

■ Defendants argue that there are four unsettled questions of state law warranting abstention under the *Pullman* rule: (1) whether the notice of a violation of No. 236, served on March 27, 1984, is in force in light of the subsequent repeal of that ordinance; (2) whether No. 237 applies to Hometown; (3) whether a concession located in the corner of Hometown would

---

**14.** *Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

constitute a dual use in violation of Section 601 of the Township Zoning Code; and (4) whether Ordinance No. 339 would permit Hometown's activities because of a possible prior nonconforming use.[15]

 In our view, this case does not present difficult and unsettled questions of state law; furthermore, state court resolution of defendants' first and third questions would not moot federal challenges to Ordinance Nos. 237 and 339. Finally, we will conclude *infra*[16] that No. 237 clearly does not apply to Hometown. Accordingly, *Pullman* abstention is not required.

### III.

We will consider state law issues raised by Ordinance Nos. 237 and 339 before we reach any federal constitutional questions. *See Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 117, 104 S.Ct. 900, 917, 79 L.Ed.2d 67 (1984); *Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring). Under Pennsylvania law, the Ordinances are presumptively valid and the burden is upon plaintiffs to prove otherwise. *Com. v. Ashenfelder,* 413 Pa. 517, 520, 198 A.2d 514, 515 (1964); *Bilbar Construction Co. v. Eastown Twp. Bd. of Adjustment,* 393 Pa. 62, 70–72, 141 A.2d 851, 856 (1958).

### A.

Ordinance No. 237 states in pertinent part:

"No theatre or place of amusement or *store specializing in the sale of adult products,* or store commonly referred to as 'Adult Book Store' or 'Adult Theatre', shall be permitted where there is sold on the premises pornographic material as defined under Ordinance No. 235...." (emphasis supplied).

 The phrases "adult products" and "specializing" are not defined in the Ordinance. Defendants claim that No. 237 applies to Hometown; plaintiffs say it does not. At oral argument, defendants asserted that Hometown is a store specializing in the sale of adult products because a majority of its customers are adults and it sells products that adults use.[17] Plaintiffs argue that "adult products" refers to sexually explicit materials and since Hometown does not specialize in the sale of sexually explicit materials, but instead specializes in the sale of ordinary drug store items, the ordinance does not apply to it.[18]

Under Pennsylvania law, zoning ordinances must be strictly. construed because they are in derogation of the common law.[19] When a term has not been defined in a zoning ordinance, it must be construed so that the landowner receives the benefit of the least restricted use of his property.[20] Moreover, undefined terms are to be given their plain meaning rather than a strained meaning; any doubt should be resolved in favor of the owner and the Court should not find a prohibition by implication.[21]

It is clear under Pennsylvania law that the words "adult products" refer to sexually explicit materials rather than to products commonly used by adults. The only Penn-

---

**15.** In our view, this possibility does not justify abstention.

**16.** See *infra* at pp. 17–20.

**17.** Defendants also argue that the Court should abstain because the meaning of "adult products" is uncertain. We do not agree.

**18.** Since we will hold that No. 237 does not apply to plaintiffs we need not reach the facial challenge to the ordinance. We note, however, that because of the repeal of Ordinance No. 235, No. 237 may be void for vagueness. See *Hynes v. Mayor of Oradell,* 425 U.S. 610, 620, 96 S.Ct. 1755, 1760, 48 L.Ed.2d 243 (1976).

**19.** *Exton Quarries, Inc. v. Zoning Board of Adjustment,* 425 Pa. 43, 49–50, 228 A.2d 169, 173–74 (1967).

**20.** *Re Appeal of Hoffman,* 66 Pa.Commw. 7, 12, 444 A.2d 764, 767 (1982)

**21.** *See Mt. Laurel Racing Assoc. v. Zoning Hearing Board, Municipality of Monroeville,* 73 Pa. Commw. 531, 534–35, 458 A.2d 1043, 1044–45 (1983); *Abington Twp. v. Dunkin' Donuts Franchising Corp.,* 5 Pa.Commw. 399, 405–06, 291 A.2d 322, 325 (1972).

sylvania decision which we have found containing the phrase "adult products" used it to refer to sexually explicit materials. *See Joe's Enterprises of Stroudsburg, Inc. v. City of Schuylkill*, 73 Pa.Commw. 124, 127, 457 A.2d 607, 609 (1983).[22] Furthermore, in the context of ordinances dealing with zoning and pornography the word "adult" is commonly used to mean sexually explicit or erotic. *See, e.g., Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 62, 74, 101 S.Ct. 2176, 2185, 68 L.Ed.2d 671 (1981); *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 52–53, 96 S.Ct. 2440, 2443–44, 49 L.Ed.2d 310 (1976); *Kacar, Inc. v. Zoning Hearing Bd.*, 60 Pa. Commw. 582, 432 A.2d 310 (1981); *see also* Anderson, 1 *Law of Zoning of Pennsylvania* § 14.01 (1982); Gelfand, *Federal Constitutional Law and American Local Government*, § 4–4 (1984).

■ The meaning of specialize also is clear. Specialize means "to make narrower and more intensive," 2 *The Compact Edition of The Oxford English Dictionary* 2948 (1971) (third entry), or "to limit in scope or interest," *Webster Third New International Dictionary* 2186 (1981) (second entry). In light of these definitions and the Pennsylvania rules of construction governing the interpretation of zoning ordinances, we cannot conclude that Hometown specializes in the sale of sexually explicit or erotic films. Hometown sells hundreds of items of merchandise and is not engaged solely or principally in the sale and rental

of adult videocassettes.[23] We therefore hold, as a matter of Pennsylvania law, that Ordinance No. 237 does not apply to Hometown.

### B.

Ordinance No. 339 deals with the distribution or exhibition of obscene materials [24] and applies to "[a]ll activities of the type proscribed by the Title 18 Pennsylvania Consolidated State Annotated Section 5903 as amended." Section 5903 is the State Obscenity Act, which states in pertinent part:

"§ 5903. Obscene and other sexual materials.

(a) Offenses defined.—No person, knowing the obscene character of the materials involved, shall:

\* \* \* \* \* \*

(2) sell, lend, distribute, exhibit, give away or show any obscene materials to any person 17 years of age or older or offer to sell, lend, distribute, exhibit or give away or show, or have in his possession with intent to sell, lend, distribute, exhibit or give away or show any obscene materials to any person 17 years of age or older, or knowingly advertise any obscene materials in any manner".

The statutory definition of "obscene materials" is identical to the standard for obscenity articulated in *Miller v. California*,

---

**22.** The Court in *Joe's Enterprises* used the expression in referring to a prior Pennsylvania decision, *Vernon v. Borough of Darby*, 59 Pa. Commw. 11, 428 A.2d 770 (1981). The *Vernon* Court stated that Vernon was in the business of selling sexually oriented magazines and products, and operating movie booths showing films of sexual activities. The Court in *Joe's Enterprises* characterized Vernon's business as an adult products business.

**23.** *Compare with Kacar, Inc. v. Zoning Hearing Bd.*, 60 Pa.Commw. 582, 586, 432 A.2d 310, 312 (1981) (Allentown adult theater zoning ordinance, which applies to stores "having as a substantial ... portion of its stock in trade" sexually explicit or erotic films.)

**24.** *Compare with Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976) (explicit sexual speech); *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981) (same); *American Booksellers Assoc. Inc. v. Hudnut*, 771 F.2d 323 (7th Cir.1985) (discussing municipal ordinances creating a civil cause of action for any person coerced into pornographic performance, for any person who has pornography forced upon him or her, for any person assaulted in a way directly caused by pornography, and for any woman "as a woman acting against the subordination of women"). *See also* Hoffman, "Feminism, Pornography, and Law," 133 *U.Pa.L. Rev.* 469, 517–525 (1985) (discussing ordinances).

413 U.S. 15, 24, 93 S.Ct. 2607, 2615, 37 L.Ed.2d 419 (1973).[25]

Ordinance No. 339 forbids activities of the type proscribed by § 5903 in commercial, controlled commercial, and planned business districts, but permits, subject to some restrictions, those activities in the planned industrial districts of the Township.[26]

### 1.

We first consider the validity of Ordinance No. 339 insofar as it permits activities of the type proscribed by § 5903.[27] Plaintiffs argue that it would be unreasonable and irrational for a Township to authorize murders, rapes and robberies to be conducted within the Township's planned industrial districts, and, similarly, that it is unreasonable and irrational for the Township to permit the sale of obscene materials, in violation of state law, in such zones.[28] Defendants respond that a Township has the power to enact a zoning ordinance restricting the commission of acts punishable under the State Obscenity Act to certain areas and cite *Whitehall Township v. Games*, 69 Pa. D. & C.2d 514 (Lehigh 1974); *Re Appeal of French Adult Books, Inc.*, 44 Pa.Commw. 489, 404 A.2d 740 (1979) to support that proposition. These cases do not, however, support defendants' position.[29]

**25.** Section 5903(b) states in pertinent part:

"Obscene materials." Any literature, including any book, magazine, pamphlet, newspaper, storypaper, comic book or writing, and any figure, visual representation, or image including any drawing, photograph, picture or motion picture, if:

(1) the average person applying contemporary community standards would find that the subject matter taken as a whole appeals to the prurient interest;

(2) the subject matter depicts or describes in a patently offensive way, sexual conduct of a type described in this section; and

(3) the subject matter, taken as a whole, lacks serious literary, artistic, political, educational or scientific value

"Sexual conduct." Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated, and patently offensive representations or descriptions of masturbation, excretory functions and lewd exhibition of the genitals."

**26.** NOW, THEREFORE, BE IT ENACTED AND ORDAINED by the Board of Supervisors of Lower Southampton Township and it is hereby enacted and ordained by authority of the same as follows:

*SECTION I*— The Zoning Ordinance of Lower Southampton, Ordinance No. 2 as amended is hereby further amended to add thereto new subsections which shall provide as follows:

*Section 601*— Use Regulations [Commercial District]

(22) All activities of the type which are proscribed by the Title 18 Pennsylvania Consolidated Statutes Annotated Section 5903 as amended shall not be permitted in this district.

*Section 604-A*— Use Regulations [Planned Business District]

(17) All activities of the type which are proscribed by the Title 18 Pennsylvania Consolidated Statutes Annotated Section 5903 as amended shall not be permitted in this district.

*Section 601-B*— Use Regulations [Controlled Commercial District]

(18) All activities of the type which are proscribed by the Title 18 Pennsylvania Consolidated Statutes Annotated Section 5903 as amended shall not be permitted in this district.

*Section 703*— Use Regulations [Planned Industrial District]

(9)(n) All activities of the type which are proscribed by the Title 18 Pennsylvania Consolidated Statutes Annotated Section 5903 as amended shall be permitted in this district provided:

(i) The building or structure of such use shall be located no closer than 500 feet from any other building or structure having a school, church, recreational, religious, institutional and/or educational use;

(ii) No such use shall be located within 2,000 feet of a similar use;

(iii) No materials shall be visible from any window or door;

(iv) No sale, rental or use of material shall be made to persons under the age of 17 years.

**27.** *Id.* at Section 703.

**28.** Plaintiff asks that the Court strike the ordinance as a violation of the Fourteenth Amendment, citing *Parham v. Hughes*, 441 U.S. 347, 351–52, 99 S.Ct. 1742, 1745–46, 60 L.Ed.2d 269 (1979); *United States Dept. of Agriculture v. Moreno* 413 U.S. 528, 533, 93 S.Ct. 2821, 2825, 37 L.Ed.2d 782 (1973); *Dandridge v. Williams*, 397 U.S. 471, 483, 90 S.Ct. 1153, 1160, 25 L.Ed.2d 491 (1970); *McGowan v. Maryland*, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961).

**29.** *Whitehall* held that the showing of pornographic films or coin-operated machines at the rear of defendant's adult book store did not constitute the operation of a commercial amusement facility requiring a special exception because that activity was an accessory use to de-

The limits of a municipality's authority to legislate with respect to zoning are well established under Pennsylvania law. As a matter of state substantive due process law, zoning ordinances " 'must bear a substantial relationship to the health, safety, morals or general welfare of the community.' " *Hopewell Twp. Board of Supervisors v. Golla,* 499 Pa. 246, 255, 452 A.2d 1337, 1341 (1982), *quoting from Surrick v. Zoning Hearing Board of Upper Providence Township,* 476 Pa. 182, 188, 382 A.2d 105, 107–08 (1977). It is, to say the least, dubious whether a zoning ordinance which permits an activity made illegal by state law could be deemed to bear a substantial relation to the health, safety, morals or general welfare of the Township. But, in any event, this portion of Ordinance No. 339 is invalid because it conflicts with state law. As will be discussed *infra,* subsection (k) of § 5903 specifically permits a municipal ordinance on the same subject only if the ordinance is consistent with the Act. Moreover,

> "[i]t is, of course, self evident that a municipal ordinance cannot be sustained to the extent that it is contradictory to, or inconsistent with, a state statute...."

*Western Pa. Restaurant Assn. v. Pittsburgh,* 366 Pa. 374, 381, 77 A.2d 616, 620 (1951); *United Tavern Owners of Phila. v. Phila. School District,* 441 Pa. 274, 279, 272 A.2d 868, 870 (1971). We hold, therefore, as a matter of Pennsylvania law, that Lower Southampton Township had no authority to enact that portion of Ordinance No. 339 which explicitly permits in planned industrial districts that which is illegal under state law.

**2.**

We next consider the validity under Pennsylvania law of the portion of Ordinance No. 339 forbidding activities of the type proscribed by § 5903, The State Obscenity Act, in controlled commercial, commercial and planned business zones.[30] Specifically, we consider (a) whether the Ordinance is preempted by state law because of a possible material conflict between the Ordinance and the State Obscenity Act and (b) whether the Ordinance is violative of Article I, §§ 6 and 9 of the Pennsylvania Constitution.[31]

It is well-established that:

> "In Pennsylvania, cities have no power to act unless that power has been granted to them by the state legislative body by an enabling act. Moreover, even when cities have been given powers to act, if the state has preempted the field in a specific area, then in that area cities have no power despite the wording of the enabling act on which they rely."

> \* \* \* \* \* \*

> "In determining whether, by the enactment of the specific statute, the Commonwealth completely barred a municipality's enactment of an ordinance relating to the same field, we will refrain from striking down the local ordinance unless the Commonwealth has explicitly claimed the authority itself, or unless there is such actual, material conflict between the state and local powers that only by striking down the local power can the power of the wider constituency be protected."

---

fendant's retail store, which store was permitted in a C-2 Community Commercial zone. In *French Adult Books,* the Commonwealth Court held that a Zoning Board of Adjustment did not abuse its discretion or err as a matter of law in denying a special exception for such coin-operated "peep shows" where the record was devoid of evidence that these shows actually were a use accessory to operation of an adult book store. Neither case considered the present issue.

**30.** *See* Ordinance No. 339, Sections 601, 604–A and 601–B at note 26, *supra.* We consider these sections of Ordinance No. 339 because No. 339

contains a severability clause. *Id.,* Section II. A severability clause is not judicially conclusive if the unity of the general legislative scheme is completely destroyed by a severance of its provisions. *Saulsbury v. Bethlehem Company,* 413 Pa. 316, 321, 196 A.2d 664, 667 (1964). We find no such destruction of legislative policy in the present situation.

**31.** *See infra,* note 32.
The ordinance clearly bears a substantial relationship to the morals or general welfare of the community as required by *Hopewell Twp. Board of Supervisors v. Golla, supra.*

*United Tavern Owners v. Philadelphia School District*, 441 Pa. 274, 278–79, 280, 272 A.2d 868, 870–71 (1971) (no preemption); *see also Colorado Springs Amusements, Ltd. v. Rizzo*, 524 F.2d 571, 577 (3d Cir.1975), *cert. denied*, 428 U.S. 913, 96 S.Ct. 3228, 49 L.Ed.2d 1222 (1976) (no preemption).

■ If a statute is silent as to whether municipalities may enact ordinances relating to the field entered by the state, the Court is required to ascertain the probable intention of the legislature. *City of Pittsburgh v. Allegheny Valley Bank of Pittsburgh*, 488 Pa. 544, 549, 412 A.2d 1366, 1368 (1980); *Western Pennsylvania Restaurant Ass'n v. City of Pittsburgh*, 366 Pa. 374, 380–81, 77 A.2d 616, 619–20 (1951). Here, however, the statute is not silent. Subsection (k) of § 5903 provides:

"Ordinances or resolutions.—Nothing in this chapter shall be construed to invalidate, supersede, repeal or preempt any ordinance or resolution of any political subdivision insofar as it is consistent with this chapter, and political subdivisions further retain the right to regulate any activities, displays, exhibitions or materials not specifically regulated by this chapter."

This language expresses the legislature's intention to permit municipalities to enact supplemental anti-obscenity ordinances as long as such ordinances are "consistent" with § 5903. We must therefore determine whether the part of Ordinance No. 339 under consideration is consistent with or materially conflicts with § 5903. *See Commonwealth v. Rich*, 63 Pa.Commw. 30, 33–35, 437 A.2d 516, 518–19 (1981).

Ordinance No. 339 and § 5903 differ in two important respects: the penalties provided for a violation and the procedures for determining whether a violation has occurred.[32]

■ Section 1301 of the Lower Southampton Township Zoning Code provides that a person convicted of a violation of a zoning ordinance shall be sentenced to pay a fine of not more than $500.00 and in default of payment thereof is subject to imprisonment for not more than sixty days. A person convicted of violation of § 5903 is guilty of a misdemeanor of the first degree or a felony of the third degree, 18 Pa.Cons. Stat.Ann. § 5903(h) and subject to maximum penalties of a $10,000 fine and five years imprisonment (first degree misdemeanor) and a $15,000 fine and seven years imprisonment (third degree felony) 18 Pa. Cons.Stat.Ann. §§ 1101, 1103–04.

In *Commonwealth v. Rich, supra*, the Commonwealth Court addressed the question whether a difference in the penalty provisions of a Philadelphia anti-obscenity ordinance and § 5903 created a material conflict. The Court noted that the "Supreme Court [of Pennsylvania has] held that a municipality may promulgate regulations that are 'in aid and furtherance of the purposes of the general law as may seem appropriate to the necessities of the particular locality and which are not in themselves unreasonable.'" *Commonwealth v. Rich*, 63 Pa.Commw. at 34, 437 A.2d at 519, *quoting from Western Pennsylvania Restaurant Assn. v. City of Pittsburgh*, 366 Pa. at 381, 77 A.2d at 620. The *Rich* Court concluded that the difference in the penalty provisions created no material conflict and the Philadelphia ordinance penalty was not unreasonably related to the City's interest in maintaining public health, welfare and morals. In view of the *Rich* case, we reach the same conclusion with respect to Ordinance No. 339.[33]

**32.** At argument, the Court requested the parties to brief the question whether under Pennsylvania law a municipality may in a zoning ordinance prohibit that which is illegal under state law. Transcript of Preliminary Injunction at 84–85, January 11, 1985. Unfortunately, plaintiffs did not comply with the Court's request, even though this issue is crucial to our analysis of the case. We will consider several state law issues not briefed by plaintiffs, including the right to a jury trial.

**33.** We note that *Rich* was apparently governed by the State Obscenity Act before 5903(k) was added in 1981. The Court regarded the amendment as "supporting but not controlling" its decision. 63 Pa.Commw. at 35 n. 10, 437 A.2d at 519 n. 10.

The difference between the procedures for finding violations of the ordinance and the statute poses a more serious likelihood of a material conflict. Ordinance No. 339 and the enforcement provisions of the Lower Southampton Township's Zoning Code neither preclude nor guarantee a defendant the right to a trial by jury. The Township Zoning Code provides that a Zoning Administrative Officer shall enforce the Zoning Code, *see* Lower Southampton Zoning Code § 1000, and that any person aggrieved or affected by a decision of the Officer may appeal to the Zoning Hearing Board, *Id.* § 1006.[34]

On appeal a Court of Common Pleas has discretion to take additional evidence.[35] The Court may deny a party the right to additional testimony where (a) the party had a full opportunity to be heard before the Zoning Board, *Udylite Corp. v. Phila. Zoning Bd. of Adjustments*, 16 Pa. D. & C.2d 346 (1958), *aff'd.* 394 Pa. 645, 148 A.2d 916 (1959); (b) the evidence is rebuttal evidence, the need for which could have been anticipated, *Boron Oil Co. v. City of Franklin*, 2 Pa.Commw. 152, 277 A.2d 364, 366 (1971); or (c) the evidence is repetitive or immaterial to the issues raised in the appeal. *William Chersky Joint Enterprises v. Board of Adjustment*, 426 Pa. 33, 36, 231 A.2d 757, 758–59 (1967). A *de novo* hearing may be warranted when the "party seeking the hearing ... generally demonstrate[s] that the record is incomplete because it was denied the opportunity to be fully heard, or because relevant testimony it offered was excluded." *Borough*

*Council of Churchill Borough v. Pagal, Inc.*, 74 Pa.Commw. 601, 607, 460 A.2d 1214, 1218 (1983).

The scope of judicial review of a Zoning Board's ruling depends upon whether the Court takes additional evidence: if the Court takes no such evidence, it reviews the Board's decision to determine whether the Board committed an abuse of discretion or an error of law, *Valley View Civil Association v. Zoning Board of Adjustment*, 501 Pa. 550, 554–55, 462 A.2d 637, 639–40 (1983); if the Court takes additional evidence, it then decides the case *de novo*.

The State Obscenity Act provides that a defendant's right to a jury trial shall be preserved in all proceedings under the Act, § 5903(j). The Act also provides that a defendant is entitled to a jury trial in an equity proceeding in which an attorney for the Commonwealth seeks to enjoin any person who violates or clearly is about to violate the Act, § 5903(g).

The Pennsylvania Constitutional guarantees to a trial by jury were considered by the Supreme Court of Pennsylvania in a state constitutional challenge to the Motion Picture Control Act of 1959. *Wm. Goldman Theatres, Inc. v. Dana*, 405 Pa. 83, 173 A.2d 59, *cert. denied*, 368 U.S. 897, 82 S.Ct. 174, 7 L.Ed.2d 93 (1961). The Court held, *inter alia*, that Art. I, §§ 6 and 9 of the Pennsylvania Constitution require that, in prior restraint or criminal action involving the sale or lease of obscene films, a defendant has the right to a jury determination whether the films are obscene.[36]

---

**34.** The Pennsylvania Municipalities Planning code, 53 P.S. § 10101 *et seq.*, divides landowners' appeals to the Court of Common Pleas challenging a zoning ordinance into three types; (1) challenges to the process of enactment of adoption of any ordinance, 53 P.S. § 11001; (2) challenges to the substantive validity of an ordinance, but involve a claim that a decision or order of the government body or of an officer or agency of the municipality is not authorized by or is contrary to the provisions of an ordinance or map, 53 P.S. § 11006. *See, generally,* Ryan, *Pennsylvania Zoning Law and Practice*, § 9.5.2 (1981).

**35.** The Court may take additional testimony itself or, when not forbidden by statute, *e.g.*, 53

P.S. § 11010, remand to the Zoning Board for further evidence.

**36.** The Motion Picture Control Act of 1959 required any person intending to sell, lease, rent, exhibit or use any motion picture film, reel or view (hereafter "film") to register with a Board of Motion Picture Control within 48 hours before the first showing of the film. The Board, composed of three individuals selected by the Governor, had the authority to require a registrant to supply a copy of the film after its first showing. The Board was empowered to examine the film and to disapprove it if a majority of the Board were of the opinion that it was obscene. In addition, if the Board determined

Section 6 states: "Trial by a jury shall be as heretofore, and the right thereof remains inviolate," and Section 9 provides: "In all criminal prosecutions the accused hath a right to ... a speedy public trial by an impartial jury of the vicinage, ... nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land." The *Goldman* Court held that these provisions entitle a defendant "to a public trial by an impartial jury of the vicinage in every situation in which he would have been entitled to such a trial at the time of the adoption of our State Constitution of 1790 and ever since under our succeeding constitutions," and continued:

"The utterance of obscene matter was a crime at common law for which a defendant chargeable therewith was entitled to a trial by jury. This was likewise so under similar guarantees in the Constitution of 1790 and 1838, long before the adoption of our present Constitution. The above quoted provisions of Sections 6 and 9 of Article I guarantee that a person can be found guilty of a crime of the indicated description *only if* an impartial jury of the vicinage is of the opinion that his utterance was obscene...."

405 Pa. at 93–94, 173 A.2d at 64. (Citations omitted).

that the film was "unsuitable for children", the film would be disapproved for exhibition to them. The Board was supposed to publish a record of all films which were disapproved. Under the statute, an aggrieved registrant could appeal from the Board's determination to the Board for reconsideration and then to the Court of Common Pleas of the proper county. In addition, the Board might apply to the Court of Common Pleas of any county in which a disapproved film was shown or was about to be shown, and upon an affidavit of the Board, the Court could issue a preliminary injunction. The Act also made it a criminal violation for any person to sell, lease, loan, exhibit or use any disapproved film.

In *Goldman*, the Court held that the Act on its face effected "a pre-censorship of the exercise of individual's right to freely communicate thoughts and opinions" and therefore violated Article I, § 7 of the Pennsylvania Constitution. The Court found that the Act

The Court held that the Act violated Sections 6 and 9 because it substituted the Board's determination of what is obscene for a jury's determination of what is obscene, and thereby reduced a "jury's function to a single determination of whether or not the defendant did the physical act condemned by the statute, for example, exhibiting an administratively disapproved film." 405 Pa. at 94, 173 A.2d at 65.

Since we conclude that a Court of Common Pleas has the discretion to empanel a jury to determine, *inter alia,* whether materials sold or leased by a vendor are obscene, we now consider whether such discretion conflicts with the requirements of the State Obscenity Act or is violative of Art. I, §§ 6 and 9 of the Pennsylvania Constitution.[37] While the Act and Constitution would require a jury determination prior to the issuance of a preliminary injunction, Ordinance No. 339 is not a prior restraint. The Ordinance penalizes past conduct and does not empower any Township official or court to enjoin future conduct. Therefore, we find that there is no material conflict between the section of the State Obscenity Act requiring a trial by jury before a court may enjoin the future sale of obscene materials, § 5903(g), and the Ordinance, zoning code and accompanying zoning appeals procedures. Similarly, the Ordinance does not violate Art. I, §§ 6

"expressly restrains the initial showing of a film for 48 hours after notice to the Board of its intended exhibition; and subsequent showings are likewise subjected to previous restraint for the reason that, if the motion picture is exhibited after the censors have disapproved it, the exhibitor may be criminally punished upon proof, *not of showing a picture that is obscene or unsuitable for children but merely upon proof of showing a picture the exhibition of which had been priorly restrained by the administrative action of the Board of Censors."*

405 Pa. at 92–93, 173 A.2d at 64.

**37.** The *Rich* court found no material conflict between the Act's jury trial provisions and the Philadelphia zoning ordinance because a defendant convicted under the ordinance by a bench trial in Philadelphia Municipal Court has an opportunity for a jury trial *de novo* before the Court of Common Pleas. 63 Pa.Commw. at 35, 437 A.2d at 519.

**1216**

and 9 insofar as these sections require a jury determination prior to the issuance of a preliminary injunction.

Whether a violation of the ordinance is a criminal or civil offense is unclear under state law. *Compare Babin v. City of Lancaster,* —— Commw. ——, ——, 493 A.2d 141, 144–45 (1985) (civil offense) *with Lower Merion Township v. Schenk,* 247 Pa.Super. 494, 499–501, 372 A.2d 934, 935–36 (1977) (criminal offense). Our conclusion, however, does not depend upon whether the violation is classified as civil or criminal. If violation of the Ordinance is a civil offense, then the Ordinance could not materially conflict with the State Obscenity Act because the Act does not contemplate the use of civil actions to regulate obscene materials. If, on the other hand, a violation of the Ordinance is a criminal offense, then an order by the Court of Common Pleas refusing to empanel a jury would conflict with the Act; however, we cannot assume that the Court of Common Pleas will issue such an Order.

Nor is the Ordinance violative of the Pennsylvania Constitution's jury trial guarantees. If a violation of the ordinance is a civil, not a criminal, offense, §§ 6 and 9 would not apply to a proceeding for a violation of the Ordinance unless the offense has a basis in common law. *See In re Friedman,* 72 Pa.Commw. 274, 283, 457 A.2d 983, 988 (1983). Since zoning ordinances were unknown to the common law, *see* Toll, *Zoned America* 1, 172–187 (1969) (first comprehensive zoning ordinance in the United States was enacted in New York in 1916), Anderson, 1 *Law of Zoning in Pennsylvania* § 1.02, no such right could attach. If a violation of the ordinance is a criminal offense, then §§ 6 and 9 would apply and defendant would be entitled to a trial by an impartial jury. *Wm. Goldman Theatres v. Dana,* 405 Pa. 93, 173 A.2d at 64. Again, we cannot assume that any right to a jury trial will be denied by a Court of Common Pleas.

3.

■ Finally, we consider the validity under the United States Constitution of the portion of Ordinance No. 339 forbidding activities of the type proscribed by § 5903 in the controlled commercial, commercial and planned business districts. Plaintiffs contend that this portion of the Ordinance is invalid under the First and Fourteenth Amendments because it is an impermissible time, place and manner restriction which operates as a prior restraint and because it lacks the procedural safeguards required by *Freedman v. Maryland,* 380 U.S. 51, 58–59, 85 S.Ct. 734, 738–39, 13 L.Ed.2d 649 (1965).

The short answer to this contention is that Ordinance No. 339 does not authorize the prior restraint of the sale or lease of obscene videocassettes; it merely penalizes past conduct. Accordingly, the question of compliance with *Freedman* does not arise.

" 'Behind the distinction [between a prior restraint and criminal sanction for a past communication] is a theory deeply etched in our law; a free society prefers to punish the few who abuse rights of speech after they break the law than to throttle them and all others beforehand. It is always difficult to know in advance what an individual will say, and the line between legitimate and illegitimate speech is often so finely drawn that the risks of freewheeling censorship are formidable.' See *Speiser v. Randall,* 357 U.S. 513 [78 S.Ct. 1332, 2 L.Ed.2d 1460] (1958)." *Vance v. Universal Amusement Co.,* 445 U.S. 308, 316 n. 13, 100 S.Ct. 1156, 1161 n. 13, 63 L.Ed.2d 413 (1980), *quoting from Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 558–59, 95 S.Ct. 1239, 1246, 43 L.Ed.2d 448 (1975).

■ Obscene speech is unprotected by the First and Fourteenth Amendments, *Miller v. California,* 413 U.S. 15, 23, 93 S.Ct. 2607, 2614, 37 L.Ed.2d 419 (1973). However, if the Township had adopted an overbroad or vague standard for prohibition of past sales or rentals of obscene videocassettes, the Ordinance could not survive constitutional scrutiny. *See Schad v. Borough of Mount Ephraim,* 452 U.S. at 65–66, 101 S.Ct. at 2180–81 (entertain-

ment may not be prohibited because it displays the nude human figure because "'[n]udity alone' does not place otherwise protected material outside the mantle of the First Amendment.") This is not such a case. The Ordinance defines obscenity by reference to the definition in the State Obscenity Act which in turn conforms to the *Miller* standard. *See supra* note 25 and accompanying text. In other words, the Ordinance prohibits uses which involve the "hard core" pornography which is not protected by the First Amendment.

▆▆▆▆ We express no view as to whether the videocassettes which Hometown wishes to lease fall within the ban of Ordinance No. 339. The assignment of an X-rating to a particular videocassette by the Motion Picture Association of America does not necessarily mean that it is obscene when measured by the *Miller* standard. None of the videocassettes have been introduced into evidence. We cannot, therefore, determine, even if it otherwise were appropriate for us to do so, whether such films are hard core pornography which *Miller* holds is unprotected. The fact that the subject matter of a videocassette is sex or that there are scenes of nudity therein does not make the film legally obscene, *Jenkins v. Georgia*, 418 U.S. 153, 161, 94 S.Ct. 2750, 2755, 41 L.Ed.2d 642 (1974).

## IV.

▆▆▆ Plaintiffs request declaratory relief, and a permanent injunction.[38]

With respect to Ordinance 339, plaintiffs presumably have no interest in obtaining an injunction against that portion of the Ordinance which authorizes activities of the type proscribed by § 5903 in planned industrial districts. Their request for an

---

**38.** This case does not implicate the Eleventh Amendment concerns raised in *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 as plaintiffs seek relief against a municipality and its officers, not the state and its officers. Only the latter are protected by the Eleventh Amendment. *See Lincoln County v. Luning*, 133 U.S. 529, 530, 10 S.Ct. 363, 363, 33 L.Ed. 766 (1890).

injunction against the remainder of the Ordinance will be refused.

▆▆▆▆ The Court is not persuaded that it is necessary to enjoin the application of Ordinance No. 237 to Hometown. We have held that the Ordinance does not apply to Hometown. Ordinarily the practical effect of injunctive and declaratory relief will be identical and a district court can protect a plaintiff's interests by entering a declaratory judgment, making the stronger injunctive relief unnecessary. *See Wooley v. Maynard*, 430 U.S. 705, 711, 97 S.Ct. 1428, 1433, 51 L.Ed.2d 752 (1977); *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931, 95 S.Ct. 2561, 2567, 45 L.Ed.2d 648 (1975). Injunctive relief is appropriate where there are "'exceptional circumstances and a clear showing that an injunction is necessary to afford adequate protection of constitutional rights.'" 430 U.S. at 712, 97 S.Ct. at 1434. We find no such exceptional circumstances present. The Court retains its jurisdiction to entertain any future application for injunctive relief with respect to Ordinance 237 if warranted by changed circumstances during the pendancy of this action.

## ORDER

AND NOW, this 21st day of October, 1985, for the reasons stated in the accompanying memorandum, it is hereby ORDERED, ADJUDGED and DECREED:

1. Ordinance No. 237 of Lower Southampton Township, Bucks County, Pennsylvania, does not prohibit plaintiff Raymond Brown's sales or rentals of "X-rated" or adult videocassettes at Hometown Pharmacy, 200 Bustleton Avenue, Feasterville, Pennsylvania, because Brown's business is not a store specializing in the sale of adult products.

Plaintiffs also ask us to enjoin Lower Southampton Township, its Board of Supervisors and Pornography Commission, and all individual defendants, acting in their official capacities, from directly or indirectly harassing or retaliating against plaintiffs for their challenges to the Township's Ordinances, or for any other reason. The present record does not warrant the granting of this inclusive and imprecise relief.

2. Section 703 of said Township's Ordinance No. 339 which permits in planned industrial districts activities of the type proscribed by 18 Pa.C.S.A. § 5903 is invalid. Those portions of the Ordinance which prohibit such activities in the commercial, controlled commercial and planned business districts are valid.

3. Plaintiff's application for a permanent injunction is DENIED without prejudice to its renewal with respect to Ordinance No. 237 if warranted by changed circumstances occurring during the pendancy of this action.